UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States. I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters. Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2. Investigation reveals that, on or about Thursday, February 26, 2026, **Agustin SANTOS-PAULINO** (also known as: Agustin Lantigua-De La Cruz) was found in the United States, upon being encountered, at or near Rio Piedras, Puerto Rico, while present in the United States illegally, and after having been previously deported. Therefore, this Affidavit is made in support of a Criminal Complaint against **SANTOS-PAULINO** based on violation of **Title 8, _United States Code_, Section 1326(a)&(b)(1),** Re-entering the United States after being previously deported or removed subsequent to a felony conviction.

3. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

1

## **PROBABLE CAUSE**

4. On or about Thursday, February 26, 2026, Border Patrol Agents (BPAs) were conducting roving patrol operations at or near Rio Piedras, Puerto Rico.

5. This area is known for frequent drugs & migrants smuggling activity.

6. During patrol, BPAs observed a subject walking along a public roadway.

7. The subject, upon noticing the presence of uniformed Border Patrol Agents (BPAs), abruptly widened his eyes, changed his direction of travel, and attempted to walk away from the area.

8. Based on training and experience, BPAs recognized this type of behavior as consistent with individuals attempting to avoid contact with law enforcement.

9. As BPAs approached the subject on foot, the subject appeared visibly nervous, avoided eye contact, and his hands were visibly shaking.

10. BPAs identified themselves as immigration officers and proceeded to interview the encountered / walking subject which was later identified as **SANTOS-PAULINO**.

11. BPAs questioned **SANTOS-PAULINO** as to his citizenship and nationality.

12. **SANTOS-PAULINO** freely admitted to being a citizen & national of the Dominican Republic unlawfully present in the United States.

13. Record checks were conducted and it was determined that **SANTOS-PAULINO** is in fact an illegal alien with prior immigration history.

14. At the time, **SANTOS-PAULINO** was arrested & transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing & removal proceedings.

15. Once at Ramey Station, **SANTOS-PAULINO's** photograph & fingerprints were taken and entered to different law enforcement database systems, confirming that **SANTOS-PAULINO** possess, in fact, prior immigration history.

16. As to **SANTOS-PAULINO's** immigration history:

> (a) On February 27, 2004, **SANTOS-PAULINO** illegally entered the United States at or near Isabela, Puerto Rico. When processed for immigration, **SANTOS-PAULINO** was offered & granted a Voluntary Departure to the Dominican Republic.
>
> (b) On February 28, 2004, **SANTOS-PAULINO** officially & physically voluntarily departed the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.
>
> (c) On July 09, 2006, **SANTOS-PAULINO** illegally entered the United States for a second time, arriving by boat at or near Aguadilla, Puerto Rico.
>
> (d) On April 27, 2007, **SANTOS-PAULINO** was encountered by the Puerto Rico Police Department (PRPD) & Puerto Rico Department of Treasury (Hacienda de P.R.) & the Puerto Rico Permits Administration (ARPE) during a business inspection at the Arena's Café Restaurant in Rio Piedras, Puerto Rico. **SANTOS-PAULINO** was detained at the time along with a group of eighteen (18) other people attempting to obstruct the entrance, preventing law enforcement agencies from entering the premises subject to inspection.
>
>> i. **SANTOS-PAULINO** was arrested & transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico.

  ii.  Once at Ramey Station, **SANTOS-PAULINO** was processed, offered & granted, another Voluntary Departure, for a second time.

(e) In May 2007, **SANTOS-PAULINO** voluntarily departed from the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.

(f) On February 15, 2011, **SANTOS-PAULINO** illegally entered the United States for a third time, at or near Aguadilla, Puerto Rico.

(g) On November 25, 2011, **SANTOS-PAULINO** was encountered by U.S. Postal Inspectors, while attempting to cash a fraudulent U.S. Postal Money Order in San Juan, Puerto Rico. Case was consulted to the U.S. Attorneys Office and **SANTOS-PAULINO's** case was declined for prosecution.

  i.  During interviews held by postal inspectors, **SANTOS-PAULINO** admitted being a native & citizen of the Dominican Republic, illegally present in the United States.

  ii.  On that same date of November 25, 2011, **SANTOS-PAULINO** was referred for immigration to Homeland Security Investigations (HSI).

  iii.  On November 25, 2011, **SANTOS-PAULINO** was processed for immigration & a removal order was issued on his behalf.

(h) On February 07, 2012, **SANTOS-PAULINO** was officially & physically removed from the United States to the Dominican Republic from the Port of New Orleans, Louisiana.

(i) On February 08, 2015, **SANTOS-PAULINO** was encountered upon been intercepted at sea by the U.S. Coast Guard (USCG), while attempting to re-enter the United States illegally by boat at or near Aguadilla, Puerto Rico.

    i. On February 09, 2015, **SANTOS-PAULINO** was processed for reinstatement of a prior order of removal. In addition, **SANTOS-PAULINO** was prosecuted for Title 8 USC 1326 (a) – Reentry of removed aliens.

    ii. On March 05, 2015, **SANTOS-PAULINO** pled guilty as charged.

    iii. On April 21, 2015, **SANTOS-PAULINO** was convicted of the felony offense & sentenced to four (04) months of imprisonment, and one (01) year of supervised release.

(j) On June 24, 2015, **SANTOS-PAULINO** was officially & physically removed from the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.

(k) On September 01, 2020, **SANTOS-PAULINO** was encountered at sea, by USCG upon been intercepted for a second time, attempting to re-enter the United States illegally by boat at or near Aguadilla, Puerto Rico. At the time due to the COVID pandemic, **SANTOS-PAULINO** was not prosecuted and was repatriated back to the Dominican Republic.

(l) On May 15, 2025, **SANTOS-PAULINO** illegally re-entered the United States after having arrived by boat at or near Isabela, Puerto Rico.

17. After his arrest, Border Patrol Agents advised **SANTOS-PAULINO** of his right to legal representation and his right to speak with the Consular Officer of his native country, the

5

Dominican Republic.

18. **SANTOS-PAULINO** was found in, after having re-entered the United States at a place other than a designated Port of Entry.

19. **SANTOS-PAULINO** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, **SANTOS-PAULINO** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

20. **SANTOS-PAULINO** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

21. Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of Title 8, *United States Code,* Section 1326(a)&(b)(1).

_____
Luis Polo
Border Patrol Agent

Subscribed and Sworn before me pursuant to FRCP 4.1 at 7:13pm by telephone, this 27th day of February 2026.

_____
Honorable Mariana E. Bauzá Almonte
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO